IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| IN RE: | : | |
| VASO ACTIVE PHARMACEUTICALS, INC., | : | Bankr. Case No. 10-10855-CSS |
| | : | |
| Debtor. | : | |
| | : | |
| ———————————————————— | : | |
| JOHN J. MASIZ, | : | |
| | : | |
| Appellant, | : | |
| | : | Adv. Pro. No. 11-52005-CSS |
| v. | : | Civ. No. 13-169-LPS |
| | : | Civ. No. 13-1992-LPS |
| JEOFFREY L. BURTCH, Avoidance Action | : | |
| Trustee, | : | |
| | : | |
| Appellee. | : | |

## MEMORANDUM

Pending before the Court are John J. Masiz's ("Masiz") two appeals (D.I. 1; Civ. No. 13-1992, D.I. 1)[1] from (1) the Bankruptcy Court's December 19, 2012 Proposed Judgment (D.I. 1-1) and (2) the Bankruptcy Court's October 21, 2013 Final Judgment (Civ. No. 13-1992, D.I 1-1) awarding judgment of $741,842.45 in favor of the Avoidance Action Trustee ("the Trustee"). For the reasons discussed, the Court will affirm the Bankruptcy Court's October 21, 2013 Final Judgment and dismiss as moot Masiz's appeal from the Bankruptcy Court's December 19, 2012 Proposed Judgment.

## I.    BACKGROUND

Vaso Active Pharmaceuticals, Inc. ("the Debtor") filed a petition for chapter 11 bankruptcy relief in the United States Bankruptcy Court for the District of Delaware on March

---

[1] The Court consolidated these two appeals and assigned Civ. No. 13-169 as the lead case. (D.I. 13) Unless otherwise noted, references to "D.I. __" will indicate the docket for Civ. No. 13-169.

11, 2010. (Bankr. Case No. 10-10855, D.I. 1) The Debtor filed a Second Amended Plan on

October 2, 2011, which the Bankruptcy Court confirmed on November 12, 2010. (D.I. 14 at 4;

D.I. 20 at 4) The Plan Confirmation Order appointed Jeoffrey L. Burtch as the Trustee, but

whether that appointment has taken full effect remains a disputed matter in this appeal. (D.I. 14

at 4; D.I. 20 at 5) The Trustee initiated the underlying Adversary Proceeding by filing a

complaint ("the Complaint") against John J. Masiz and Joseph F. Frattaroli, seeking to recover

$1,099,190 ($776,363 from Masiz and $322,827 from Frattaroli) the Debtor had transferred to

them prior to filing for bankruptcy relief.[2]

Masiz founded the Debtor in 2001 and served as its CEO and a member of its board of

directors until 2004. (D.I. 14 at 4) In 2004, the Securities and Exchange Commission sued

Masiz and the Debtor, in connection with an initial public offering of the Debtor's equity. (*Id.* at

5) Pursuant to a settlement of that lawsuit, Masiz agreed to resign as CEO and board member of

the Debtor. (*Id.*) He did, however, continue to work for the Debtor as a "strategic consultant."

(*Id.*)

The Debtor filed a malpractice lawsuit against Robinson & Cole, LLP ("Robinson &

Cole") in 2006, alleging that the firm had provided negligent legal representation in connection

with the initial public offering. (*Id.* at 7) Kelley Drye & Warren, LLP ("Kelley Drye") agreed to

represent the Debtor in the malpractice lawsuit in return for an hourly rate and a percentage of

any recovery. (*Id.*) Around the same time, the Debtor's board of directors approved an

arrangement whereby Masiz would work unpaid, but if the Debtor was successful in its lawsuit

against Robinson & Cole, Masiz would be entitled to retroactive compensation for his prior

---

[2] Frattaroli has filed a separate appeal in this Court. (*See* Civ. No. 13-170, D.I. 1)

unpaid work. (D.I. 14 at 6–7) The Debtor's board of directors determined that it would value Masiz's services at a $175,000 annual salary. (*Id.* at 6, n.3)

Robinson & Cole settled the malpractice lawsuit with the Debtor for $2.5 million ("the Robinson & Cole Settlement"). (*Id.* at 7; D.I. 20 at 3) Shortly before the parties reached this settlement, the Debtor fired Kelley Drye. (D.I. 20 at 5) Once Robinson & Cole disbursed the settlement funds to the Debtor, Kelley Drye asserted an attorney's lien in the Robinson & Cole Settlement. (*Id.*) This prompted the Debtor and Kelley Drye to enter into a settlement ("the Kelley Drye Settlement") whereby Kelley Drye agreed to accept $595,000 in full satisfaction of its outstanding fees and further "acknowledged" that the Debtor intended to release $598,000 of the Robinson & Cole Settlement to Masiz in satisfaction of his accrued unpaid wages. (D.I. 14 at 8; D.I. 1-3 at 12) After that transfer, but before filing bankruptcy, the Debtor made an additional payment of $178,363 to Masiz on account of his continued employment. The Trustee alleged in the Complaint that the Debtor's transfers to Masiz of $598,000 of the Robinson & Cole Settlement and the additional payment to him constituted recoverable transfers, as either preference payments under 11 U.S.C. § 547 or fraudulent transfers under 11 U.S.C. § 548. (D.I. 15-1 at A130)

On October 9, 2012, the Bankruptcy Court entered an Opinion ("the First Opinion")[3] granting partial summary judgment in favor of the Trustee on some of the discrete elements of his § 548 claim. (D.I. 1-3) The Bankruptcy Court also determined that several issues of material fact remained in dispute, which precluded summary judgment on the overall § 548 claim. (*Id.* at 56–57) Subsequently, the Bankruptcy Court issued another Opinion on October 15, 2013 ("the

---

[3] The Bankruptcy Court later memorialized this decision in its December 19, 2012 Proposed Judgment. (D.I. 1-1)

Second Opinion")[4] granting summary judgment in the Trustee's favor on his entire § 547 claim.
(D.I. 15-5 at A672) The Bankruptcy Court found that both transfers to Masiz qualified as
preference payments, but credited Masiz for providing $34,520.55 in "new value" pursuant to 11
U.S.C. § 547(c)(4). (*Id.* at A690) The Bankruptcy Court entered final judgment against Masiz
in the amount of $741,842.45. (Civ. No. 13-1992, D.I. 1-1) Masiz filed two timely notices of
appeal in this Court from the Bankruptcy Court's Proposed Judgment and Final Judgment. (D.I.
1; Civ. No. 13-1992, D.I. 1) The Court has fully considered the parties' briefs and the entire
record filed in this matter.[5] (*See* D.I. 14; D.I. 20; D.I. 21)

## II.    CONTENTIONS

Masiz alleges that the Bankruptcy Court erred in several regards. First, he claims that the
Trustee's appointment has not yet taken effect, thus the Trustee lacks standing in this case. (D.I.
14 at 10) Second, he maintains that the Bankruptcy Court should have found that the
"earmarking doctrine" excluded the transfers from the reach of the Trustee's §§ 547 and 548
avoidance powers. (*Id.* at 11) Third, he argues that the Bankruptcy Court decided several
disputed issues of fact, which was improper at the summary judgment stage. (*Id.* at 18–22)
Fourth, Masiz contends that although the Bankruptcy Court was correct to find that he had
successfully raised a "new value" defense, the Bankruptcy Court erred in calculating the amount
of that defense. (*Id.* at 20) Finally, Masiz asserts that the Bankruptcy Court should not have
considered the Trustee's second Motion for Summary Judgment because it was untimely
according to the Bankruptcy Court's scheduling order. (*Id.* at 24)

---

[4] The Bankruptcy Court later memorialized this decision in its October 21, 2013 Final
Judgment. (Civ. No. 13-1992, D.I. 1-1)

[5] Pursuant to Fed. R. Bankr. P. 8019(b), the court finds that oral argument is unnecessary
because the facts and legal arguments are adequately presented in the briefs and record, and the
decisional process would not be significantly aided by oral argument.

The Trustee counters that the Bankruptcy Court's Confirmation Order had immediately authorized him to pursue this Adversary Proceeding, thus there is no question as to his standing in this case. (D.I. 20 at 10) The Trustee further assets that Masiz has not highlighted any evidence in the record that creates a dispute as to any material fact. (*Id.*) Moreover, the Trustee notes that the Bankruptcy Court's findings regarding the § 548 claim are now moot, given that the Bankruptcy Court has granted final judgment against Masiz on the § 547 claim. (*Id.* at 19)

## III.     STANDARD OF REVIEW

Appeals from the Bankruptcy Court to this Court are governed by 28 U.S.C. § 158. Pursuant to § 158(a), district courts have mandatory jurisdiction to hear appeals "from final judgments, orders, and decrees" and discretionary jurisdiction over appeals "from other interlocutory orders and decrees." 28 U.S.C. § 158(a)(l) and (3). In conducting its review of the issues on appeal, this Court reviews the Bankruptcy Court's findings of fact for clear error and exercises plenary review over questions of law. *See Am. Flint Glass Workers Union v. Anchor Resolution Corp.,* 197 F.3d 76, 80 (3d Cir. 1999). "A finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948). The Court must "break down mixed questions of law and fact, applying the appropriate standard to each component." *Meridian Bank v. Alten,* 958 F .2d 1226, 1229 (3d Cir. 1992).

## IV.     DISCUSSION

### A.     Standing

Masiz first argues that the Trustee lacks standing to pursue the Complaint. (D.I. 14 at 11) In Masiz's view, the terms of the Confirmation Order provide that the Trustee's powers do not vest until the "Effective Date" of the Plan. (*Id.*) Masiz claims that the Plan states that the

5

Effective Date is contingent upon the Debtor's successful merger with another entity. Because that merger never occurred, he argues that the Plan has not become effective and the Trustee's avoidance powers have not yet vested. (*Id.* at 13) Therefore, Masiz claims that the Bankruptcy Court erred as a matter of law by declining to dismiss this proceeding for lack of standing.

The Court disagrees. First, the Bankruptcy Court found that Masiz's Notice of Non-Occurrence—the purported indication that the merger had failed—was invalid because it was filed by Masiz and not by the Debtor's board of directors. (D.I. 15-1 at A781) Masiz does not dispute that finding. Second, and more importantly, the premise of Masiz's argument is flawed. The Confirmation Order on November 11, 2010 immediately vested the Trustee with the authority to prosecute the Adversary Proceeding:

> For the avoidance of doubt and ***notwithstanding anything to the contrary in the Plan or this Order***, (i) the Avoidance Action Trustee is authorized to bring any Avoidance Action or other claims assigned ***immediately*** and prior to receipt by creditors of other distributions under the Plan and (ii) no injunctions (in Section 13.18 of the Plan or otherwise), exculpations or releases have or shall be granted to any party relating to any Avoidance Actions or other claims, all of which are preserved and may be pursued by the Avoidance Actions Trustee.

(D.I. 15-1 at A121) (emphasis added) The Trustee's authority did not depend upon the Effective Date of the Plan. The Court therefore rejects this argument and concludes that the Bankruptcy Court did not err in concluding that the Trustee has standing in this case.

## B. Earmarking Doctrine

Masiz next argues that the Bankruptcy Court erred as a matter of law by finding that the earmarking doctrine did not apply to exculpate him from avoidance liability. (D.I. 14 at 15) The earmarking doctrine flows from the statutory requirement that a voidable preference first requires some interest of the debtor in property. *See In re Winstar Commc'ns, Inc.*, 554 F.3d 382, 400 (3d Cir. 2009); *see also* 11 U.S.C. § 547(b). The doctrine provides that "[w]hen . . . funds are

provided by [a] new creditor to or for the benefit of the debtor for the purpose of paying the

obligation owed to [an existing] creditor, the funds are said to be 'earmarked' and the payment is

held not to be a voidable preference." *In re Winstar Commc'ns, Inc.*, 554 F.3d at 400 (internal

quotation marks omitted).

In order to invoke this doctrine, a party must demonstrate "(1) the existence of an

agreement between the new lender and the debtor that the new funds will be used to pay a

specified antecedent debt, (2) performance of that agreement according to its terms, and (3) the

transaction viewed as a whole . . . does not result in any diminution of the [debtor's] estate." *Id.*

"The central inquiry is 'whether the debtor had the right to disburse the funds to whomever it

wished, or whether the disbursement was limited to a particular old creditor or creditors under

the agreement with the new creditor.'" *In re AmeriServe Food Distribution, Inc.*, 315 B.R. 24,

30 (Bankr. D. Del. 2004) (quoting *In re Superior Stamp and Coin Co., Inc.*, 223 F.3d 1004, 1009

(9th Cir. 2000)).

The Bankruptcy Court concluded that the earmarking doctrine did not apply because the

Robinson & Cole Settlement did not direct any funds to Masiz. (D.I. 1-3 at 21) It explained:

> Robinson & Cole is not a party to the Kelly Drye Settlement
> Agreement. Thus, that agreement cannot be the basis for applying
> the earmarking doctrine. The only agreement between Robinson &
> Cole and Debtor is the Robinson & Cole Settlement Agreement
> resolving the Robinson & Cole Litigation. But, that agreement is
> silent regarding the disposition of the proceeds of the settlement.
> Indeed, it does not even mention the Kelly Drye Settlement
> Agreement. The sole provision of the Robinson & Cole Settlement
> Agreement relating to the disposition of the settlement proceeds
> provides that "[b]y no later than December 31, 2009, [Robinson &
> Cole] will cause $2,500,000 to be delivered by wire transfer to
> [Vaso], provided that [Robinson & Cole's] attorneys have received
> the executed Settlement Documents from [Vaso] by that time."

(*Id.* at 20) Masiz urges the Court to view the Kelley Drye Settlement as the operative agreement

for the earmarking defense. In his view, the agreement with Robinson & Cole is not relevant,

7

because Kelley Drye had an interest in the funds. (D.I. 14 at 17) In other words, Masiz asserts that Kelley Drye successfully "earmarked" the funds for Masiz through the Kelley Drye Settlement. (*Id.*)

The Court rejects this argument. It is true that Kelley Drye had an interest in the Robinson & Cole Settlement payment to the Debtor, insofar as Kelley Drye had a claim against those funds for its own attorney fees. Kelley Drye, however, did not have ***control*** over the funds. Robinson & Cole paid the $2.5 million settlement directly to the Debtor, and the Debtor had the ability to disburse those funds to whomever it wished. The language in the Kelley Drye Settlement belies Masiz's theory—Kelley Drye merely "acknowledged" that the Debtor intended to use a portion of the Robinson & Cole Settlement funds to pay Masiz's accrued wages. (*See* D.I. 1-3 at 12) Kelley Drye did not disburse any funds to the Debtor. The absence of that control forecloses the earmarking doctrine from applying to the Kelley Drye Settlement. *See In re AmeriServe Food Distribution, Inc.*, 315 B.R. at 31 (noting that, in order for earmarking doctrine to apply, party must both disburse funds and direct those funds). The Court concludes that the Bankruptcy Court did not err as a matter of law by denying Masiz's earmarking doctrine defense.

### C. Findings of Fact under 11 U.S.C. § 547(b)(5)

Masiz next maintains that the Bankruptcy Court's decision to grant summary judgment in favor of the Trustee on his § 547 claim relied on improper findings of fact. (D.I. 14 at 18) Specifically, Masiz argues that whether § 547(b)(5) is satisfied is a disputed issue of fact. This element requires that the transfer in question:

> [E]nables such creditor to receive more than such creditor would receive if—
>
> (A) the case were a case under chapter 7 of this title;
> (B) the transfer had not been made; and

> (C) such creditor received payment of such debt to the extent
> provided by the provisions of this title.

11 U.S.C. § 547(b)(5). Masiz contends that whether the transfer payments provided him with a

higher payout than a hypothetical chapter 7 liquidation is a disputed issue of fact. In his view,

"[t]here is no proof as to how much could have been distributed to unsecured creditors in a

liquidation under Chapter 7." (D.I. 14 at 19)

    "To satisfy the requirements of § 547(b)(5), the trustee must establish that the transfer

yielded the creditor a greater return on its debt than it would have received if the transfer had not

taken place and it had received a distribution under a Chapter 7 liquidation." *In re Kiwi Int'l Air*

*Lines, Inc.*, 344 F.3d 311, 317 (3d Cir. 2003). The key inquiry is to "compare 'what the creditor

actually received and what it would have received under the chapter 7 distribution provisions of

the Code' in order to determine whether the creditor received more than its fair share." *Id.*

(quoting 2 Collier on Bankruptcy ¶ 547.03[7][a] (15th rev. ed. 2003)). This hypothetical

analysis occurs as of the time of the bankruptcy filing. *See Palmer Clay Products Co. v. Brown*,

297 U.S. 227, 229 (1936) ("Whether a creditor has received a preference is to be determined, not

by what the situation would have been if the debtor's assets had been liquidated and distributed

among his creditors at the time the alleged preferential payment was made, but by the actual

effect of the payment as determined when bankruptcy results.").

    Masiz's argument fails because the Trustee need only establish that Masiz would have

received less than a 100% payout on his unsecured, nonpriority claim in a hypothetical chapter 7

liquidation. *See In re AmeriServe Food Distribution, Inc.*, 315 B.R. at 32; *see In re Tire Kings of*

*Am., Inc.*, 164 B.R. 40, 41 (Bankr. M.D. Pa. 1993). If the Trustee can make this showing, then

any payment Masiz received from the Debtor on account of an outstanding debt would have

necessarily increased his share of the recovery. *See In re AmeriServe Food Distribution, Inc.*,

9

315 B.R. at 32. Here, Masiz admits that he holds at least a partial unsecured non-priority claim. (D.I. 14 at 19) Unless the Debtor's estate could have paid all of its debts in full, a hypothetical liquidation would have only distributed to Masiz, at most, a pro-rata share of the assets of the estate. *See* 11 U.S.C. § 726(b). Any additional transfer made on an antecedent debt would have increased his share and, thus, satisfied § 547(b)(5).

The Debtor's bankruptcy petition, certified by its then-acting President, indicates that as of the filing date the Debtor had total assets of $645,000 and total debts of $10,187,112. (D.I. 15-1 at A4) The Debtor's disclosure statement further projects that a liquidation under chapter 7 would produce a minimal recovery for secured claims and no distribution on account of unsecured claims. (*Id.* at A98) The Court is persuaded that the Trustee, as the party bearing the burden of proof, made a prima facie showing under Federal Rule of Civil Procedure 56. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 331 (1986). This "affirmative showing shifts the burden of production to the party opposing the motion and requires that party either to produce evidentiary materials that demonstrate the existence of a 'genuine issue' for trial or to submit an affidavit requesting additional time for discovery." *Id.* (quoting Fed. R. Civ. P. 56(e), (f)). Masiz has not pointed to any evidence in the record that suggests that the Debtor could have paid all unsecured claims in full in a hypothetical chapter 7 liquidation. Simply claiming that a disputed issue of fact exists, without more, is insufficient to rebut the Trustee's prima facie showing. *See id.* The only facts in the record indicate that the Debtor could not have made a 100% distribution on the unsecured claims and, hence, the transfers to Masiz necessarily increased his share of the recovery. The Court finds that the Bankruptcy Court did not err in granting summary judgment in the Trustee's favor on § 547(b)(5).

**D.    New Value Defense**

Masiz next disputes the method by which the Bankruptcy Court calculated his "new value" defense. (D.I. 14 at 20) Under the Bankruptcy Code, a trustee may not avoid any transfer:

> [T]o or for the benefit of a creditor, to the extent that, after such transfer, such creditor gave new value to or for the benefit of the debtor—
>
> (A) not secured by an otherwise unavoidable security interest; and
> (B) on account of which new value the debtor did not make an otherwise unavoidable transfer to or for the benefit of such creditor.

11 U.S.C. § 547(c)(4). Masiz bears the burden of proving the new value defense. *Id.* § 547(g). The Bankruptcy Court found that Masiz met this burden by establishing that he had provided new value to the Debtor in the form of his employment services between December 30, 2009 and March 11, 2010. (D.I. 15-5 at A689) For those 72 days, the Bankruptcy Court calculated the value Masiz provided as the proportion of his annual $175,000 salary. (*Id.* at A690 n.80) This produced a new value defense of $34,520.55, which partially offset the countervailing preference payment. (*Id.* at 690)

Masiz argues that the Bankruptcy Court erred by making a finding of fact as to the amount of new value he provided the Debtor. (D.I. 14 at 20) He claims that "[t]he Trustee fail[ed] to account for any facts beyond the amount of Masiz's yearly salary in determining the amount of new value provided by Masiz." (*Id.*) Masiz bears the burden of proof on this issue at trial. 11 U.S.C. § 547(g). The Trustee, as the party who moved for summary judgment, but does not have the ultimate burden of proof, "satisf[ied] Rule 56's burden of production [if] . . . [he] demonstrate[d] to the Court that the nonmoving party's evidence is insufficient to establish an essential element of the nonmoving party's claim." *Catrett*, 477 U.S. at 331. There is no dispute

that the Debtor valued Masiz's services at $175,000 annually and that the appropriate time-frame

for his new value defense was 72 days. (D.I. 14 at 20) Here, Masiz does not suggest any method

for how the Bankruptcy Court should have calculated the new value. (D.I. 21 at 4–5) Masiz also

does not point to any facts in the record that suggest he provided additional value beyond his

employment services to the Debtor. (*Id.*) Instead, he merely claims that the amount of new

value he provided is a disputed material fact. (D.I. 14 at 20) This conclusory statement does not

create a genuine dispute of a material fact. *See* Fed. R. Civ. P. 56(c), (e). Thus, the Court

concludes that the Bankruptcy Court did not err in granting summary judgment on Masiz's new

value defense in the amount of $34,520.55.

E.       **Findings of Fact under 11 U.S.C. § 548(a)(1)**

Masiz claims that the Bankruptcy Court erred by improperly making two findings of fact

at the summary judgment stage in its First Opinion. (D.I. 14 at 21–23) These two facts are:

(1) that Masiz had the intent to hinder, delay or defraud the Debtor's creditors, and (2) that Masiz

lacked good faith in connection with the settlement transfers, such that reasonably equivalent

value was not exchanged. (*Id.*) As the Trustee correctly points out, these factual findings are

now moot. (*See* D.I. 20 at 19) While these two findings are necessary elements of the § 548

claim, they are not relevant to the § 547 claim. *Compare* 11 U.S.C. § 547(b) *with*

§ 548(a)(1)(A)–(B). The Trustee's alternative claims under §§ 547 and 548 both sought to

recover the same transferred funds. (*See* D.I. 15-1 at A130–31) The Bankruptcy Court's Final

Judgment against Masiz pertains only to the § 547 claim. (D.I. 15-5 at A700; Civ. No. 13-1992,

D.I. 1-1) Given that the Bankruptcy Court has found that the Trustee can recover the transfers to

Masiz pursuant to § 547, its earlier findings in its First Opinion relating to partial summary

judgment on the § 548 claim are now moot. *See, e.g.*, *In re Cont'l Airlines*, 91 F.3d 553, 558 (3d

12

Cir. 1996) (explaining that appeal is moot when "events have taken place during the pendency of the appeal that make it impossible for the court to grant any effectual relief whatever").

### F.  Timeliness

Finally, Masiz argues that the Bankruptcy Court erred by considering the Trustee's second Motion for Summary Judgment, which was untimely according to an earlier scheduling order. (D.I. 14 at 24) The Bankruptcy Court explained that although the Trustee did not file that motion within the timeframe allotted by the scheduling order, it was nevertheless timely according to Fed. R. Bankr. P. 7056. (D.I. 15-5 at A696) The Bankruptcy Court retains discretion to modify its own scheduling orders. *See United States v. Pearson*, 2012 WL 3249460, at \*1 (D. Del. Aug. 7, 2012). The Court does not find that the Bankruptcy Court abused its discretion in modifying its own scheduling order to comply with the more lenient time limitations set forth in the Federal Rules of Bankruptcy Procedure.

### V.  CONCLUSION

Accordingly, and for the foregoing reasons, the Bankruptcy Court's October 21, 2013 Final Judgment and Order will be AFFIRMED. Masiz's appeal from the Bankruptcy Court's December 19, 2012 Proposed Judgment will be DISMISSED as moot. An appropriate Order follows.

September 9, 2015
Wilmington, Delaware

HON. LEONARD P. STARK
UNITED STATES DISTRICT JUDGE

13